# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID KIM** and **ESTHER KIM**, *individually, and as guardian ad litem for* **EK,** *her minor child,* | Case No. 3:20-cv-2025-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **BEAVERTON SCHOOL DISTRICT 48J**, | |
| Defendant. | |

Daniel J. Snyder, Carl Post, and John Burgess, LAW OFFICES OF DANIEL SNYDER, 1000 S.W. Broadway, Suite 2400, Portland, Oregon 97205. Of Attorneys for Plaintiffs.

Naomi Levelle Haslitt and Iván Resendiz Gutierrez, MILLER NASH LLP, 111 S.W. Fifth Avenue, Suite 3400, Portland, Oregon 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiffs David Kim (David), Esther Kim (Esther), and Esther as guardian ad litem (the GAL) to EK, David and Esther's minor child, allege that Defendant Beaverton School District 48J (the School District) discriminated against them because of David's and EK's disabilities and because of David's, Esther's, and EK's race and national origin, in violation of the Americans with Disability Act (ADA), 42 U.S.C. § 12132 *et seq.*; Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 701 *et seq.*; and Oregon law, *see*

Oregon Revised Statutes [ORS] §§ 659A.403, 659A.142. The School District moves to dismiss much of Plaintiffs' First Amended Complaint (FAC). The School District does not, however, move to dismiss David's claims that the School District discriminated against him because of his disability in violation of the ADA (claim one), Section 504 (part of claim four), and Oregon law (part of claim five). For the reasons stated below, the Court grants the School District's motion to dismiss in part, denies the School District's motion to dismiss in part, and grants Plaintiffs leave to amend their complaint.

## STANDARDS

### A. Motion to Dismiss

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the Court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**B. Leave to Amend**

Rule 15(a)(2) of the Federal Rule of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (simplified). The purpose of the rule "is 'to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a motion to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048,

1052 (9th Cir. 2003). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Generally, however, "[a]bsent prejudice, or a strong showing of any of the remaining [four] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (alterations added, emphasis in original). When weighing the factors, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

## BACKGROUND

Plaintiffs David and Esther Kim came to the United States from South Korea as adults. David and Esther self-identify as Asian, and Korean is their primary language. David and Esther have two daughters. In September 2019, David and Esther Kim's younger daughter, EK, began attending Nancy Ryles Elementary School (the School) in the School District. EK has an anxiety disorder that causes her to fear going to school and to urinate in her clothing at school. David and Esther told staff at the School about EK's anxiety disorder, but the School allegedly took no action regarding EK's anxiety.

David and Esther were familiar with the School, having sent their elder daughter there since 2014. David and Esther drove their elder daughter to and from school. Because David has knee, heart, and lung conditions that impair his abilities to stand and walk, the Oregon Department of Motor Vehicles issued him a disabled parking permit in 2014. David, who wears a knee brace and uses a cane to ambulate, displayed his disabled parking permit inside the windshield of his car and used one of the School's disabled parking spots to drop-off or pick-up his elder daughter without incident during his elder daughter's entire tenure at the School.

During the first week of school in September 2019, school staff placed a sign at the entrance to the parking lot, stating that the parking lot was restricted to buses and school staff.

Despite that sign, staff allowed David to access disabled parking as he had when his elder daughter attended the school. On September 23, 2019, however, a white staff member (who Plaintiffs later learned was Jane Roche) refused to admit David's car to the parking lot and directed his attention to the sign, after allegedly allowing in the white driver in front of David. David explained that he was a parent who was there to pick up his child and he needed access to disabled parking. He showed Roche his disabled parking permit, but Roche continued to deny David access. David parked on the street, off school property, and Esther went into the school to retrieve EK.

The next day, Roche again denied David access to disabled parking. David again parked on the street, off school property, while Esther went into the school to retrieve EK. Roche then approached David's car, motioned for David to lower his window, and told David to move his car. David explained that all parking was taken, he was waiting with his car running until his wife and daughter returned from the school, and that, because of his disability, he could not park farther away. As Esther and EK returned to the car, the staff member loudly and repeatedly told David "[y]ou can't park there even if you are disabled." The staff member reached inside David's window to prevent David from moving the car. Eventually the staff member let go of the car, and the Plaintiffs returned home. David complained about this incident to the School but was told the School could not help unless David knew the name of the staff person who denied him access to the parking lot.

On September 25, Roche denied David access to disabled parking yet again. After parking on the street, David approached Roche and asked for her name and position. Roche identified herself. Roche also yelled at David in front of other families, including repeating that David "can't park like you did yesterday even if you are disabled." FAC (ECF 14) at 12-13, ¶ 33.

David asked Roche to stop mentioning his disability. Roche continued to yell at David in front of the other parents picking up their children from school. While Roche yelled, David began to experience problems breathing, and angina pain in his chest. He walked to his car to retrieve his emergency inhaler. As he walked away, Roche yelled at him more loudly. Then, physical education teacher Joseph Hess, also white, shouted: "Sir! Stay away from her and be respectful, keep walking, keep walking. Good job! Thank you!" *Id*. Roche and Hess's shouting took place in front of Esther, EK, and other parents and children at the school.

Later that day, David called the School District's administrative office to request assistance receiving disability accommodations. The receptionist connected David to School Board Chair Becky Tymchuk. Tymchuk, however, told David that he needed to speak to either Monica Arbow, the School's principal, or Arbow's supervisor Kathleen Skidmore. David spoke with Arbow on September 26. Arbow told David he could use disabled parking only if he picked up his daughter after all other students had left for the day. Arbow stated that she would keep EK in the school office to wait for David, rather than letting EK leave school with the rest of the students.

On September 26, David arrived to pick up EK after the other students had left. EK was confused and upset as to why she had to wait for her parents in the office rather than leave school with her classmates. David continued to follow Arbow's September 26 instructions, waiting to pick up EK until all the other children had left school. On October 3, however, staff placed an orange traffic cone at the entrance to the school parking lot, again denying David access to disabled parking. Esther contacted the school to make an appointment with Arbow to discuss disability accommodations. While making the appointment, Jessie Newton, the School's secretary, told Esther that to use the disabled spot David would need to "arrive before 2:45 p.m.

He will have to stay in the disabled parking spot until after all the school buses have left, which will be around 3:10 p.m." FAC (ECF 14) at 16-17, ¶ 38.

David and Esther met with Arbow again on October 7. David told Arbow about the events beginning September 23. Arbow repeated the new instructions that Newton had given Esther on October 3. When David told Arbow that the rules being applied to him were different from and less favorable than the rules being applied to non-disabled parents, Arbow replied that if David was unhappy, his only option was to file a complaint with the Oregon Department of Education.

On October 20, Esther completed an Administrative Student Transfer form, requesting to transfer EK from Nancy Ryles Elementary to Scholls Heights Elementary, another school in the School District, because EK "[i]s involved in a documented case of severe harassment." FAC (ECF 14) at 18, ¶ 43. After Esther had an unproductive meeting with Arbow on October 21, Esther and David spoke by phone with Kathleen Skidmore, the School District's Executive Administrator for Elementary Schools. Skidmore asked David and Esther to meet with her in person on October 23.

At their meeting with Skidmore on October 23, David and Esther described David's disabilities and his recent experiences with the School, including the behavior of Roche and Hess, and the restrictions Arbow had placed on his use of disabled parking. David and Esther also told Skidmore about EK's anxiety disorder, and that they wished to transfer EK from Nancy Ryles to Scholls Heights Elementary. David and Esther requested that Skidmore help them with the transfer, and that Skidmore ask Roche and Hess to "stop harassing them." Skidmore stated that she would talk with Arbow and try to solve the problem. That same day, a School District employee marked Esther's Administrative Student Transfer form as "denied per phone call with

Monica Arbow." FAC (ECF 14) at 21, ¶ 50. The School District took no action regarding EK's anxiety disorder.

On October 24, David emailed Skidmore and Tymchuk requesting that EK be transferred to another elementary school in the School District. Neither Skidmore nor Tymchuk replied to that email. In a letter dated October 25, Skidmore denied the transfer request. The letter purported to be the School District's final decision. Skidmore wrote that a decision to transfer a student occurs at the level of that student's current school, and that she could not influence or overrule that decision. The letter stated that Arbow had temporarily removed Roche and Hess from parking lot duty, that David had been parked appropriately when Roche had told him to move his car, and that disabled parking should always be accessible. Skidmore apologized on behalf of herself and Arbow for David's negative experiences at Nancy Ryles Elementary. On October 28, Newton, the school's secretary, called David and Esther to tell them that their request to transfer had been denied.

On October 29, David and Esther visited Scholls Heights Elementary. During their visit, Scholls Heights Elementary staff told David and Esther that EK could not attend Scholls Heights Elementary because EK had been disenrolled from the School District altogether. EK's status in the School District's system now read "home school." David and Esther had not told Arbow that they intended to homeschool EK or asked Arbow to disenroll EK. Esther began homeschooling EK in late November 2019. On November 14, David went to Nancy Ryles Elementary to retrieve EK's belongings. This lawsuit followed

## DISCUSSION

The School District moves to dismiss Plaintiffs' second claim, that the School District discriminated against EK because of EK's disability, and third claim, that the School District discriminated against each Plaintiff because of each Plaintiff's association with a disabled

person. The School District also moves to dismiss Plaintiffs' fourth claim, that the school district violated the Rehabilitation Act, as to EK. Finally, the School District moves to dismiss Plaintiffs' claims of discrimination because of Plaintiffs' race and national origin under Oregon law and dismiss Esther and the GAL's claims of disability discrimination under Oregon law. The Court addresses each claim in turn.[1]

## A. Second Claim: The GAL's ADA Claim on EK's Behalf

The GAL alleges that the School District discriminated against EK because of EK's disability in violation of the ADA. The School District offers several reasons why the Court should dismiss the GAL's ADA claim, including: (1) the GAL's ADA claim is a "disguised" Individuals with Disabilities Education Act (IDEA) claim; (2) the GAL failed to adequately allege an ADA claim; and (3) the GAL is not entitled to the relief she seeks for her ADA claim. The Court agrees with the School District that, as currently pleaded, Plaintiffs' second claim is a disguised IDEA claim.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, the GAL must allege that EK:

> (1) . . . is a qualified individual with a disability; (2) [she] was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [her] disability.

---

[1] The School District argues that each of Plaintiffs' federal law claims are time-barred to the extent that any violations of federal law occurred more than two years before February 3, 2021. Plaintiffs, however, allege that the School District's violations of federal law began in September 2019. Thus, none of Plaintiffs' federal law claims are time-barred.

*Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (quotation marks omitted)

(citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of*

*reh'g en banc* (Oct. 11, 2001)).[2]

The IDEA "ensures children with disabilities receive needed special-education services."

*A.F. ex rel. Fournier v. Portland Pub. Sch. Dist.*, 2020 WL 1693674, at *1 (D. Or. Apr. 7, 2020).

The IDEA's "core guarantee" is that children with certain physical or intellectual disabilities

receive a "free appropriate public education." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748

(2017) (quoting 20 U.S.C. § 1412(a)(1)(A)). A free appropriate public education (FAPE)

includes "'special education and related services,' including both 'instruction' tailored to meet a

child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that

instruction." *A.F.*, 2020 WL 1693674, at *1. An Individualized Education Plan (IEP) is the

---

[2] The School District does not argue that the GAL has not alleged that EK is disabled. The Court notes, however, that, to state an ADA claim, a plaintiff must allege that she is disabled. A disability is "(i) [a] physical or mental impairment that substantially limits one or more major life activities; (ii) [a] record of such an impairment; or (iii) [b]eing regarded as having such an impairment." 28 C.F.R. § 35.108(a)(1). Major life activities include:

> (i)    Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working; and
>
> (ii)   The operation of a major bodily function, such as the functions of the immune system, special sense organs and skin, normal cell growth, and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive systems. The operation of a major bodily function includes the operation of an individual organ within a body system.

*Id.* § 35.108(c)(1). In determining whether an impairment substantially limits a major life activity, neither the term "major" nor "substantially limits" should be interpreted to create a demanding standard. *Id.* § 35.108(c)(2)(i), (d)(1)(i).

"'primary vehicle' for providing each child with the promised FAPE." *Fry*, 137 S. Ct. at 749

(quoting *Honig v. Doe*, 404 U.S. 305, 311 (1988)).

"[T]he IDEA establishes formal procedures for resolving disputes" between parents and

school officials concerning a child's IEP. *Id.* These include a preliminary meeting, followed by a

"due process hearing," then an appeal to the state education agency, and, finally, judicial review

in either state or federal court. *Id.* Because the IDEA, ADA, and Section 504 all protect

individuals with disabilities against discrimination, conduct prohibited by one often is prohibited

by the other two. *Id.* The ADA and Rehabilitation Act, however, do not contain the IDEA's

administrative dispute resolution procedures. To prevent plaintiffs from escaping the IDEA's

dispute resolution procedures by bringing their claim under the ADA or Rehabilitation Act

instead of the IDEA, the IDEA provides that "before the filing of a civil action under [the ADA,

Rehabilitation Act, or other applicable federal laws] seeking relief that is also available under

[the IDEA], the [IDEA's] administrative procedures shall be exhausted to the same extent as

would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(*l*).

Section 1415(*l*), the Supreme Court explained, requires a plaintiff seeking relief for

denial of a FAPE to exhaust the IDEA's administrative procedures even if the plaintiff does not

bring her suit under the IDEA or use the term "FAPE" in her prayer for relief. *Fry*, 137 S. Ct.

at 749. "[E]xhaustion is not necessary," however, "when the gravamen of the plaintiff's suit is

something other than the denial of" a FAPE, even if the suit is seeking education-related relief.

*Id.* at 748; *see also id.* at 754.

The Supreme Court also explained how courts might determine when a plaintiff invoking

the ADA or the Rehabilitation Act is actually seeking a FAPE. *See id.* at 755-57. "[W]hat

matters," the Supreme Court instructed, "is the crux—or, in legal-speak, the gravamen—of the

plaintiff's complaint, setting aside any attempts at artful pleading." *Id.* at 755. It might help to ask, the Supreme Court offered, whether a plaintiff could have "brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school [(*i.e.,* a public library or movie theater)]" or whether a plaintiff could have brought the same claim against the school as an adult rather than as a student. *Id.* at 756. A plaintiff's "prior pursuit of the IDEA's administrative remedies" might also suggest that the plaintiff is seeking a FAPE. *Id.* at 757.

The Court finds that the essence of the GAL's claim is for denial of a FAPE. The GAL almost verbatim alleges that the School District has denied EK a FAPE. *See* FAC (ECF 14) at 31, ¶¶ 86(f) (alleging that the School District failed "to provide written notice to David and Esther Kim concerning . . . the provision of a *free appropriate public education* of the child" (emphasis added)); 86(h) (alleging that the School District is "effectively excluding EK from attending school for a *free public education*" (emphasis added)). Many of the GAL's other allegations involve the School District failing to adhere to provisions of the IDEA designed to ensure that students with a disability receive a FAPE. For example, the GAL alleges that the School District did not "conduct an informed assessment of EK's needs for accommodation" or "identify EK as a student with a disability." *Id.* at 31, ¶ 86(b), (c). The IDEA requires the state to "indentif[y], locate[], and evaluate[]" "[a]ll children with disabilities residing in the state" so that the state can offer those children special education services. 20 U.S.C. § 1412(3)(A). Similarly, the GAL alleges that the School District did not prepare an IEP for EK or "make a process for" David and Esther "to contact the ADA coordinator for EK and to obtain an IEP for [EK]." FAC (ECF 14) at 31, ¶ 86(d). An IEP is "the 'primary vehicle' for providing each child with the promise FAPE." *Fry*, 137 S. Ct. at 749 (quoting *Honig*, 484 U.S. at 311). The GAL even faults

the school district for not notifying the GAL about the IDEA's administrative procedures. *See, e.g.*, FAC (ECF 14) at 31, ¶ 86(g).

Answering the *Fry* hypotheticals confirms that the GAL's claim is an IDEA claim. *See* 137 S. Ct. at 756. The GAL could not state a claim under the ADA against a public library or movie theater—nor a claim against the school as an employee—for failing to identify EK as an individual with a disability or for failing to provide EK an IEP. The GAL's claim includes some allegations that, admittedly, make sense outside the FAPE context. These allegations, however, are often conclusory. For example, Plaintiff alleges in a conclusory manner that the School District "fail[ed] to modify policies and procedures to accommodate EK," FAC (ECF 14) at 32, ¶ 86(m), and "failed to adequately train . . . employees . . . not to discriminate against parents and students based on disability," *id.* at 33, ¶ 86(v). The Court need not credit allegations that are merely legal conclusions. *Iqbal*, 556 U.S. at 678-79.

The GAL's other non-FAPE-related allegations involve discrimination against David, not discrimination against EK. For example, the GAL alleges that the School District "stigmatiz[ed] EK by requiring her to wait in the office after her classmates went home." FAC (ECF 14) at 31, ¶ 86(a). Plaintiffs do not allege, however, that the School District required EK to wait in the office after school because of EK's disability. Instead, they allege that the School District required EK to wait in the office after school because the School District conditioned David's access to the disability parking spot on him picking up EK later in the afternoon. That represents alleged discrimination because of David's disability, not EK's. To state a claim under the ADA, however, EK must allege the School District treated her differently because of *her* disability. *See Updike*, 870 F.3d at 949. The GAL's non-conclusory allegations related to the School District's

discrimination against EK because of EK's disability, rather than because of David's disability, overwhelmingly concern EK's right to a FAPE.

The GAL makes three additional arguments in support of her assertion that the second claim for relief is not an IDEA claim. None are availing. First, the GAL argues that she alleges that the School District violated the IDEA to show how the School District departed from its usual practices with regard to EK and therefore retaliated against EK. It is not clear against whom the GAL alleges the School District is retaliating. If the GAL is alleging that the school discriminated against EK as retaliation against David, then Plaintiffs are not alleging that the School District discriminated against EK because of EK's disability. The GAL would thus be making an associational discrimination claim.[3] Plaintiffs, however, plead associational discrimination in their next claim. The GAL, however, has not alleged any facts suggesting that the School District was retaliating against EK. The Court need not resolve this question, however, because the Supreme Court has explained that plaintiffs cannot bring a lawsuit that claims an ADA violation based on an IDEA violation without first exhausting the IDEA's administrative procedures. *See Fry*, 137 S. Ct. at 754.

Second, the GAL argues that because her second claim for relief includes a request for money damages—a form of relief that is unavailable under the IDEA—her claim is not a disguised IDEA claim. *Fry* declined to answer whether "exhaustion [is] required when the plaintiff complains of the denial of a FAPE, but the specific remedy [the plaintiff] requests— . . . money damages for emotional distress—is not one that an IDEA hearing officer may award."

---

[3] As detailed below, a plaintiff can bring an ADA claim alleging that she was discriminated against because of her association with a person who is disabled. Plaintiffs' second claim for relief, however, is not an associational discrimination claim. Thus, to survive a motion to dismiss on the second claim for relief, Plaintiffs must allege that the School District discriminated against EK *because of EK's* disability.

137 S. Ct. at 752 n.4. The Ninth Circuit, however, has held that simply requesting money damages does not remove from the reach of the IDEA's administrative exhaustion provisions a complaint otherwise seeking a FAPE. *See Paul G v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1099, 1101-02 (9th Cir. 2019) (holding that a plaintiff's ADA claim seeking money damages was a disguised IDEA claim); *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 875 (9th Cir. 2011) *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

Finally, during oral arguments Plaintiffs argued that the GAL's ADA claim on EK's behalf is not a "disguised" IDEA claim because the GAL alleged that the School District disenrolled EK because EK was disabled. Thus, Plaintiffs argue, the GAL is not seeking educational services tailored to the learning impairments EK suffers because of a disability, but rather seeking access to a public service (here, public schools). The Court need not resolve whether such a claim would represent a "disguised" IDEA claim because the GAL did not allege facts plausibly suggesting that the School District disenrolled EK because of *EK's* disability. Instead, the FAC alleges that the School District disenrolled EK because of *David's* disability.

As currently pleaded, the GAL's claim for relief amounts to an ADA claim seeking a FAPE. A plaintiff making an ADA claim that seeks a FAPE must exhaust the same administrative procedures as must a plaintiff bringing an IDEA claim and the GAL does not allege that she exhausted those procedures. Although some of Plaintiffs' allegations might support a claim that Plaintiffs are excused from exhausting the IDEA's administrative remedies, the GAL does not allege that she in entitled to have the Court excuse her failure. Thus, the GAL failed to state a claim that the School District discriminated against EK under the ADA, and the Court dismisses that claim.

**B. Third Claim: Associational Discrimination Claims under the ADA and the Rehabilitation Act**

Each Plaintiff alleges that the School District discriminated against them because of their association with a disabled individual. The GAL alleges that the School District discriminated against EK because of EK's association with David; David alleges that the School District discriminated against him because of his association with EK; and Esther alleges that the School District discriminated against her because of her association with David and EK. The School District argues that the Court should dismiss Plaintiffs' associational discrimination claims because none of the Plaintiffs allege an independent injury.

Title II of the ADA, unlike Titles I and III, does not expressly contemplate suits by non-disabled plaintiffs for discrimination because of the plaintiff's association with an individual who is disabled. *See Popovich v. Cuyahoga Cnty. Court of Common Pleas, Domestic Relations Div.*, 150 F. App'x 424, 426 (6th Cir. 2005). Federal regulations, however, provide that "[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g). Because of that regulation—as well as Congress's clear intent that Title II be construed consistently with Titles I and III—courts agree that associational discrimination claims are permitted under Title II of the ADA. *See MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 333-35 (6th Cir. 2002) (collecting cases). Courts further agree that, to have standing to bring an associational discrimination claim, a plaintiff must suffer an injury independent from the injury suffered by the disabled individual with whom the plaintiff associates. *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47-48 (2d Cir. 1997) *recognized as superseded on other grounds by Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001). The Ninth Circuit has not yet addressed

associational discriminations claim under Title II of the ADA but district courts throughout the circuit appear to be in consensus that a plaintiff may bring an associational discrimination claim but only if the plaintiff has suffered an injury independent of the injury suffered by his or her disabled associate. *See, e.g.*, *Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1288 (D. Or. 2001); *Cortez v. City of Porterville*, 5 F. Supp. 3d 1160, 1164-66 & n.2 (E.D. Cal. 2014).

An individual who is denied access to a public entity's services because the individual is associated with a disabled person has suffered an independent injury. *See* 28 C.F.R. Pt. 36, App. C, Section 36.205 Association ("[I]t would be a violation of this part for a day care center to refuse admission to a child because his or her brother has HIV disease."). An individual who is harmed because of an entity's discrimination against his or her disabled associate has also suffered an independent injury. The Second Circuit, for example, held that two children of deaf parents suffered an independent injury because of their association with their disabled parents when a hospital failed to provide the children's deaf father, a hospital patient, a sign language interpreter. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279-82 (2d Cir. 2009).[4] The hospital's refusal to provide the children's father a sign language interpreter independently harmed the children because it caused the children to become interpreters for doctors seeking to speak with the children's parents, sometimes causing the children to miss school. *Id.* Similarly, a plaintiff who was harmed because of an entity's discrimination against his or her disabled associate could bring an associational discrimination claim. *Glass*, 142 F. Supp. 2d at 1291-92 (hypothesizing that "[i]f a non-disabled companion is excluded from theater because of his or her

---

[4] *Loeffler* involved a Rehabilitation Act, not ADA, claim. 582 F.3d at 279. Courts have repeatedly explained that the Rehabilitation Act and ADA should be interpreted to cover the same conduct. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). That is also true with respect to associational discrimination claims. *Innovative Health Sys., Inc.*, 117 F.3d at 47.

association with a disabled individual (for example, no room in the theater for wheelchairs), then the non-disabled companion suffers direct harm to his or her own independent right to be in the theater because of the association with a disabled person.").

The GAL has adequately alleged an associational discrimination claim on behalf of EK. The GAL alleges that the School District disenrolled EK because she is associated with David, who is disabled. That is a paradigmatic example of an associational discrimination claim. *See* 28 C.F.R. Pt. 36, App. C, Section 36.205 Association ("[I]t would be a violation of this part for a day care center to refuse admission to a child because his or her brother has HIV disease."). The GAL also alleges that EK was harmed because of the School District's discrimination against David. Plaintiffs allege that the School District discriminated against David by making him wait to pick up EK after other children had been picked up. As a result of the School District's discrimination against David, EK was separated from her classmates and made to wait in the school office at the end of the day. The GAL alleges that EK was "confused and upset" about being singled-out from her classmates. FAC (ECF 14) at 16, ¶ 36. EK's distress at being singled-out is an injury that is both independent of David's injury and directly attributable to the School District's alleged discrimination against David.

Esther, however, has not adequately alleged an associational discrimination claim. Esther's claims are premised both on her relationship with EK and with David. For Esther's claim premised on her association with EK, Esther argues that the School District's disenrollment of EK caused Esther to "suffer[] economic losses because she had to take over home schooling of EK." FAC (ECF 14) at 34, ¶ 94. An individual who is harmed because of an entity's discrimination against a disabled individual with whom the individual associates can bring an associational discrimination claim. *See Loeffler*, 582 F.3d at 279-82, Esther's argument

fails, however, because, as explained above, Plaintiffs have not adequately alleged that the

School District disenrolled EK because of *EK's* disability. Esther has therefore failed to

adequately allege that her harm—economic loss—is because of the School District's alleged

discrimination against EK because of EK's disability.

Esther other allegation—that she suffered emotional distress because of the School

District's discrimination against EK and David—is, as alleged, simply not an injury in fact. Non-

economic injuries, including emotional harm, can confer standing. *See Chaudhry v. City of Los

Angeles*, 751 F.3d 1096, 1109 (9th Cir. 2014). "[T]he psychological consequence presumably

produced by observation of conduct with which one disagrees," however, is generally

insufficient. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,

454 U.S. 464, 485-86 (1982). Esther's threadbare allegation of emotional distress falls closer to

the latter. Accordingly, the Court dismisses Esther's associational discrimination claim under the

ADA and Rehabilitation Act.

Nor has David adequately alleged an associational discrimination claim. David alleges

that the School District discriminated against him because of his association with EK, who is

disabled. David alleges that he was harmed by the School District's "actions to exclude his minor

disabled child, EK from the free public educational services of [the School District]." FAC

(ECF 14) at 34-35, ¶ 96. Again, however, Plaintiffs have not adequately alleged that the School

District disenrolled EK because of *EK's* disability. Thus, David has not adequately alleged that

he has been harmed because of the School District's discrimination against EK. Moreover, David

not alleged a "*specific*, direct, and separate" injury. *See Glass*, 142 F. Supp. 2d at 1288 (emphasis

added). David has merely alleged in conclusory fashion that he was "harmed." FAC (ECF 14)

at 34-35, ¶ 96. Indeed, David, unlike Esther, does not even specify the kind of harm (*i.e.*,

economic losses) that he suffered because of his association with EK. Accordingly, the Court dismisses David's associational discrimination claim under the ADA and Rehabilitation Act.

## C.  Fifth Claim: Oregon Law Claims

### 1.  Race and National Origin Discrimination Claims under Oregon Law

Plaintiffs allege that the School District discriminated against them because of their race or national origin in violation of ORS § 659A.403. In their response in opposition to the School District's motion to dismiss, however, Plaintiffs appear to concede that they insufficiently alleged race and national origin discrimination. The Court agrees that Plaintiffs' did not adequately plead race and national origin discrimination and therefore grants the School District's motion to dismiss Plaintiff's race and national origin discrimination claims.

### 2.  Disability Discrimination Claims under Oregon Law

Plaintiffs also allege that the School District discriminated against them because of their disability. The School District argues that the Court should dismiss Esther's disability discrimination claim because Esther has not alleged that she is disabled. The School District also argues that the Court should dismiss the GAL's disability discrimination claim on EK's behalf because the GAL has not alleged that the School District discriminated against EK because of EK's disability. The School District does not move to dismiss David's claim. Plaintiffs failed to respond to the School District's arguments in favor of dismissing this claim.

Oregon law prohibits "any place of public accommodation" from "mak[ing] any distinction, discrimination[,] or restriction because a customer or patron is an individual with a disability." ORS § 659A.142(4). Similarly, government entities in Oregon may not "exclude an individual from participation in or deny an individual the benefits of the services, programs or activities of state government or to make any distinction, discrimination or restriction because the individual has a disability." ORS § 659A.142(5)(a). As with the ADA and Rehabilitation Act,

to state a claim under § 659A.142, "a plaintiff must allege that: (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of her disability." *Ovitsky v. Oregon*, 2014 WL 412423, at *5 (D. Or. Feb. 3, 2014) (simplified); *see also Marquard v. New Penn Fin., LLC*, 2017 WL 4227685, at *7 (D. Or. Sept. 22, 2017) (noting that Oregon disability discrimination laws must be "'construed to the extent possible' with similar provisions in the [ADA].") (quoting ORS § 659A.139).

### a. Esther's Disability Discrimination Claim under Oregon Law

The School District argues that the Court should dismiss Esther's disability discrimination claim under Oregon law because Plaintiffs do not allege that Esther is a person with a disability. The Court agrees that Plaintiffs have not alleged that Esther is disabled. Accordingly, the Court dismisses Esther's disability discrimination claim under Oregon law.

### b. EK's Disability Discrimination Claim under Oregon Law

The GAL alleges that the School District discriminated against EK "as alleged above on the basis of disability." FAC (ECF 14) at 36-37, ¶ 116. The School District argues that the Court should dismiss EK's disability discrimination claim under Oregon law because Plaintiffs do not allege that the School District discriminated against EK *because of* EK's disability. The School District asserts that Plaintiffs' themselves allege that the School District "fail[ed] to identify EK as a student with a disability," s*ee* FAC (ECF 14) at 31, ¶86(c), and that elsewhere in the FAC the GAL alleges that the School District discriminated against EK "*solely* because of Plaintiff David Kim's disability," *see id.* at 35-36, ¶ 105 (emphasis added).

The School District misstates Plaintiffs' allegations. First, the School District conflates Plaintiffs' allegation that the School District did not "identify" EK as a child with a disability with Plaintiffs not *notifying* the School District that EK was an individual with a disability. Plaintiffs, however, allege that they notified several school officials that EK was an individual with a disability. *See* FAC (ECF 14) at 18, ¶ 41 ("David and Esther Kim explained to school officials that EK was suffering from anxiety" after school officials notified David and Esther that EK was urinating in her school clothes); *id.* at 20, ¶ 49 (Plaintiffs allege that "[t]hey also discussed EK's anxiety disorder" with Skidmore, the School District's Executive Administrator for Elementary Schools); *id.* at 22, ¶ 56 ("David Kim and Esther Kim spoke again with the Board Chair Tymchuk. They explained EK's anxiety disorder."); *id.* at 24, ¶ 60 ("[Plaintiffs] explained to [Deputy Superintendent Ginny] Hansmann everything that had occurred and discussed EK's anxiety disorder."). Plaintiffs' allegation that the School District "fail[ed] to identify EK as a student with a disability" is not an allegation that the School District was unaware that EK was a student with a disability. It is instead an allegation that the School District failed to adhere to the IDEA when it failed to identify EK as a student with a disability despite being told that EK had a disability. *See* 20 U.S.C. § 1412(3)(a) (requiring states to identif[y] all children with disabilities in the state).

The School District also misstates Plaintiffs' allegations about the School District's discrimination against EK. Plaintiffs allege that the School District discriminated against EK "*as alleged above* on the basis of disability." FAC (ECF 14) at 36-37, ¶ 116. The School District focuses on the allegations immediately above: Plaintiffs' claims under the Rehabilitation Act. The School District is correct that, there, Plaintiffs allege only discrimination because of David's disability. Further above, however, (in Plaintiffs' second claim for relief, to be precise) Plaintiffs

allege that the School District discriminated against EK because of EK's disability. *See generally* FAC (ECF 14) at 31, ¶ 86. At this stage of the litigation, Plaintiffs have done enough to allege that the School District discriminated against EK because of EK's disability. Because the School District identifies no other deficiencies with the GAL's claim under § 659A.142, the Court denies the School District's motion against EK's disability discrimination claim under Oregon law.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's Partial Motion to Dismiss (ECF 15). The Court dismisses Plaintiffs' second claim for relief. The Court also dismisses in part Plaintiffs' third, fourth, and fifth claims for relief. Finally, the Court gives Plaintiffs leave to replead to the extent Plaintiffs believe they can cure the deficiencies identified in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 28th day of May, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge